**IT IS ORDERED as set forth below:**

Date: September 25, 2020

_____

**Sage M. Sigler
U.S. Bankruptcy Court Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CASE NO: |
| | : | |
| **KENNETH FLOYD PARKS**, | : | **19-56235-SMS** |
| | : | |
| Debtor. | : | CHAPTER 7 |
| _____ | : | _____ |
| | : | |
| **SCOTT BUCHANAN AND PAULETTE BUCHANAN,** | : | ADVERSARY PROCEEDING NO: |
| | : | |
| Plaintiffs, | : | |
| | : | **19-05258-SMS** |
| v. | : | |
| | : | |
| **KENNETH FLOYD PARKS,** | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

### ORDER GRANTING IN PART AND DENYING IN PART
### MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the Court is *Plaintiff's Motion for Partial Summary Judgment with Brief in Support Thereof* (the "Motion," Doc. 52), filed by Scott Buchanan ("Scott") and Paulette Buchanan

("Paulette") (collectively, "Plaintiffs") on June 10, 2020. Attached to the Motion are *Plaintiff's Statement of Material Facts in Which no Genuine Issue Exists to be Tried* (the "Statement," Doc. 52-1); the *Declaration of Paulette Buchanan* ("Paulette's Declaration," Doc. 52-2); and the *Declaration of Scott Buchanan* ("Scott's Declaration," Doc. 52-3). Defendant has not responded to the Motion and it is therefore deemed unopposed. *See* BLR 7007-1.

## I. Jurisdiction

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(I) and the Court has authority to enter a final judgment.

## II. Procedural History

Debtor filed *pro se* a voluntary petition for relief under chapter 7 of the Bankruptcy Code on April 22, 2019. (Bankr. Case No. 19-56235-SMS, Doc. 1). On July 22, 2019, Plaintiffs initiated the above-captioned adversary proceeding by filing a *Complaint for Determination of Dischargeability and Discharge Pursuant to 11 U.S.C. §§ 523 and 727* (the "Complaint," Doc. 1). Debtor filed his *Answer and Countersuit Against Plaintiffs* (the "Answer") on August 20, 2019, asserting various counterclaims (the "Counterclaims") against the Plaintiffs. (Doc. 5). Plaintiffs' *Motion to Dismiss Counterclaims* (the "Motion to Dismiss," Doc. 7) was granted on December 20, 2019 (Doc. 31). On July 24, 2020, the Court entered an *Order Granting Debtor's Motion to Dismiss in Part and Denying in Part* (Doc. 53), wherein the Court dismissed Counts III and IV of the seven-count Complaint. Plaintiffs have now moved for partial summary judgment on Counts I and II of the complaint, which relate to their claims under § 523(a)(6) (Motion at 1).

**III.     Analysis**

In accordance with Rule 56 of the Federal Rules of Civil Procedure, applicable to this Court pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, the Court will grant summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Material facts" are those that might affect the outcome of a proceeding under the governing substantive law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Further, a dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Last, the moving party has the burden of establishing the right of summary judgment. *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991); *Clark v. Union Mut. Life Ins. Co*., 692 F.2d 1370, 1372 (11th Cir. 1982).

**A.   Material Facts Not in Dispute**

Rule 7007-1(c) of the Local Rules of Practice for the United States Bankruptcy Court for the Northern District of Georgia states that "[f]ailure to file a response [in an adversary proceeding] shall indicate no opposition to the motion." B.L.R. 7007-1(c), N.D. Ga. With regard to a motion for summary judgment, Local Rule 7056-1(a)(2) provides that "[a]ll material facts contained in the moving party's statement that are not specifically controverted in respondent's statement shall be deemed admitted." B.L.R. 7056-1(a)(2), N.D. Ga. Accordingly, the following facts are admitted.

**i.   The Initial Dispute and Online Postings**

Defendant is the brother and brother-in-law of the Plaintiffs. Statement, ¶ 1. In 1990, Plaintiff Paulette Buchanan obtained a favorable judgment in the amount of $1,678.10 against Defendant for stealing money from her. *Id.*, ¶ 2. Defendant has only ever made one $25.00 payment on that debt. *Id.*, ¶ 3. Sometime in late-2000, Plaintiffs discovered that Defendant was publishing

defamatory comments about them on his ministry website and various social media platforms. *Id.*, ¶¶ 5–6. Beginning in 2001, Plaintiffs complained to various web hosting companies in an effort to have the defamatory websites and social media posts removed as violation of their terms of service agreements and Defendant was banned from social media websites. *Id.*, ¶¶ 9–10. To this day, Defendant continues to publish defamatory and inciting statements against Plaintiffs online and receives support from his followers for them. *Id.*, ¶¶ 11–12. After Defendant began boasting on social media about committing cyber-crimes, Plaintiffs contacted the FBI, which resulted in Defendant being warned by a special agent to stop committing such crimes. *Id.*, ¶ 13. In the summer of 2004, Plaintiffs published their own website to refute Defendant's claims. *Id.*, ¶ 17. That website and a subsequent website were taken down by the webhost companies. *Id.*, ¶¶ 20, 21. Plaintiffs then published another website in 2005, which they voluntarily took down in March of 2013 due to low viewing traffic. *Id.* ¶¶ 22–24.

### ii. Defendant's Attempts to Locate Plaintiffs in Connecticut

In March of 2004, an arrest warrant was issued in Connecticut for Debtor, who was residing in Georgia at the time, in connection with the harassment of the Plaintiffs. *Id.,* ¶¶ 26–27. Beginning in 2005, Defendant attempted to convince his online followers to visit Plaintiffs' home to harass them and has also personally threatened to "pay them a visit." *Id.*, ¶ 31. After the arrest warrant expired in 2011, Defendant posted pictures of himself visiting Connecticut online. *Id.*, ¶ 32. Fearing for their safety, Plaintiffs moved away from Connecticut in late September of 2013 and spent over $2,000 to install security alarms and cameras at their new home. *Id.*, ¶¶ 35, 38. Soon after, Debtor traveled to Connecticut and questioned former neighbors, the buyers of Plaintiff's former home, and other people associated with the Plaintiffs as to their whereabouts, and even filed a false police report in an attempt to locate the Plaintiffs. *Id.*, ¶¶ 36–37, 39. Defendant's

efforts continued into the spring of 2014, when he contacted Paulette's former employer and inquired as to Plaintiffs' location, claiming that they were wanted by police. *Id.*, ¶ 40. Defendant also impersonated a police officer at least once while attempting to locate Plaintiffs. *Id.*, ¶ 39.

### iii. Litigation Between the Parties

Defendant has filed numerous *pro se* lawsuits against Plaintiffs. The first such lawsuit was filed in Gwinnett County, Georgia in July of 2004. *Id.,* ¶ 28. That suit was dismissed in December of 2004, but Defendant publicly announced victory because he had forced Plaintiffs to incur attorney's fees and costs. *Id.*, ¶¶ 29–30. Defendant filed a second *pro se* lawsuit against the Plaintiffs in January of 2013 in Fulton County, Georgia, which also resulted in a dismissal. *Id.*, ¶¶ 33–34. A third *pro se* lawsuit was filed in April of 2015 in New London, Connecticut (the "Connecticut Case"), which the court dismissed in part, and the Plaintiffs filed a motion for summary judgment on the remaining claims in January of 2018. *Id.*, ¶¶ 41–44. Defendant voluntarily dismissed that suit on February 12, 2018—the day before the court was scheduled to hear oral argument on Plaintiffs' summary judgment motion. *Id.*, 45. While the Connecticut Case was pending, Debtor filed a fourth lawsuit in the Circuit Court of Washington County in Tennessee (the "Tennessee Case") in January of 2018. *Id.*, ¶ 47.

In May 2018, Plaintiffs filed a complaint against Debtor in Connecticut (the "Connecticut Complaint")[1] seeking damages related to the numerous *pro se* lawsuits filed by Debtor and an injunction to prevent Debtor from filing future lawsuits. *Id.*, ¶¶ 48–49. Defendant's motion for summary judgment in that case was denied. *Id.*, ¶ 50. On October 29, 2018, the Tennessee court dismissed the Tennessee Case with prejudice and issued a judgment against Defendant in the

---

[1] Plaintiffs refer to the Connecticut Complaint as a countersuit, but it is separate complaint that initiated a new case. *Compare* Paulette's Declaration, Exh 6 (order dismissing Defendant's original complaint, case number KNLCV 155014893S) *with* Exh. 12 (order dismissing Defendant's countersuit, case number KNLCV186035342S0).

amount of $16,800 for attorneys' fees and costs incurred by Plaintiffs (the "Tennessee Judgment"). *Id.*, ¶ 51. The Tennessee court specifically found that Defendant had filed the case to "harass or maliciously injure" Plaintiffs and that the case was filed "with the intent or was primarily designed to exhaust, deplete, impair or adversely affect [the Plaintiffs'] financial resources". *Id.*, ¶ 52. The Tennessee court also found Debtor to be an "abusive civil action plaintiff" and barred him from filing future actions without first seeking permission from the court. *Id.,* ¶ 53. Plaintiffs domesticated the Tennessee Judgment through the Fulton County State Court, and in the order dismissing Defendant's counterclaim, the Connecticut court granted the Tennessee Judgment "full faith and credit." *Id.*, ¶¶ 54–55. In addition to the four *pro se* lawsuits Defendant filed against Plaintiffs, he also made filings in a 2018 probate action that concerned Paulette's mother's remains and estate. Those filings were dismissed, and the estate was closed. *Id.*, ¶ 56–57. Last, Defendant filed another lawsuit in the District Court for the Northern District of Georgia during the pendency of his bankruptcy case. *Id.*, ¶ 62. Plaintiffs motions to dismiss and for a permanent filing injunction are pending before that court. *Id.*, ¶ 65. Defendant has harassed Plaintiffs and filed numerous frivolous actions against them over the course of the last 15 years. *Id.*, ¶¶ 66–67. Plaintiffs contend that they have incurred and paid $64,148.07 in attorneys' fees and costs in connection with the Connecticut Case and Connecticut Complaint (together, the "Connecticut Cases"). *Id.*, ¶ 68.

Based upon these facts, Plaintiffs contend that they are entitled to judgment as a matter of law on Counts I and II of the Complaint.

### B. Dischargeability under 11 U.S.C. § 523(a)(6)

Plaintiffs seek determinations that the attorneys' fees and costs they have incurred in connection with the Connecticut Cases and the amount awarded in the Tennessee Judgment are

nondischargeable under § 523(a)(6). Plaintiffs' position that the Tennessee Judgment is nondischargeable is premised upon a theory of collateral estoppel. Motion, 16.

### i.     Count I: The Connecticut Lawsuit

Section 523(a)(6) excepts from discharge "any debt – for willful and malicious injury by the debtor to another entity or to the property of another entity …" 11 U.S.C. § 523(a)(6). A prerequisite for a nondischargeability finding under § 523(a)(6) is the establishment of a debt owed to the plaintiff. *See* § 523(a) ("[a] discharge . . . does not discharge an individual debtor from any *debt . . .*") (emphasis added). The Bankruptcy Code defines a "debt" as "liability on a claim." 11 U.S.C. § 101(12). Plaintiffs contend that they incurred attorneys' fees and costs defending against the Connecticut lawsuit, resulting in a claim in the amount of at least $64,000. Complaint, ¶ 45. They also assert that they are entitled to treble damages totaling $192,000 under Connecticut law. *Id.*, ¶ 47. These amounts have not been reduced to judgment, thus Defendant's liability on the claim has not yet been determined and there is not a "debt" the Court can determine is nondischargeable. In the Motion, Plaintiffs ask the Court to award summary judgment as to Debtor's liability only and request a hearing on damages. Motion, 11. Thus, Plaintiffs have asked the Court to determine that Debtor is liable for Plaintiffs' attorneys' fees—in an amount to be liquidated at a later date—and find that the resulting debt is nondischargeable as a matter of law under § 523(a)(6).

Although not specifically cited in the Motion, Plaintiffs' assert in their Complaint that the basis for Debtor's liability on their claim for attorneys' fees and costs associated with the Connecticut Cases is Connecticut's vexatious litigation statute.[2] That statute provides that "[a]ny

---

[2] Connecticut also recognizes a common law action for vexatious litigation. *E.g. MacDermid, Inc. v. Leonetti,* 158 Conn. App. 176, 183, 118 A.3d 158, 162 (2015). But Plaintiffs point only to the statutory cause of action in their Complaint, thus the Court need not consider a potential common law cause of action.

person who commences and prosecutes any civil action or complaint against another . . . (1) without probable cause, shall pay such other person double damages, or (2) without probable cause, and with a malicious intent unjustly to vex and trouble such other person, shall pay him treble damages." Conn. Gen. St. § 52-568. An action is brought "without probable cause" if the plaintiff "lacks a reasonable, good faith belief in the facts alleged and the validity of the claim asserted." *Egbarin v. Hoffmann & Assocs.,* No. 3:18-CV-917 (VAB), 2019 WL 1129454, at *4 (D. Conn. Mar. 12, 2019) (quoting *Bernhard-Thomas Bldg. Sys., LLC v. Dunican*, 286 Conn. 548, 554, 944 A.2d 329, 334–35 (2008)). An action is brought with "malice" if the plaintiff "acted primarily for an improper purpose; that is, 'for a purpose other than that of securing the proper adjudication of the claim on which [the proceedings] are based.'" *DeLaurentis v. City of New Haven*, 220 Conn. 225, 256 n.16, 597 A.2d 807, 822 (1991) (quoting Restatement (Second), Torts § 676). Unlike a common law claim for vexatious litigation, "malice is not an essential element [of a statutory claim], but will serve as a basis for higher damages." *MacDermid, Inc. v. Leonetti*, 158 Conn. App. 176, 183, 118 A.3d 158, 162 (2015).

At least one bankruptcy court in Connecticut has found that the "without probable cause" element of the statute also satisfies the malice requirement under § 523(a)(6). *See Mendoza v. Thompson (In re Thompson)*, 511 B.R. 20, 32 (Bankr. D. Conn. 2014) (holding that a predicate finding of lack of probable cause is in substance equivalent to § 523(a)(6)'s requirement of "wrongful [conduct] ... without just cause or excuse [.]"). The same court found that the willfulness requirement under § 523(a)(6) was satisfied in that case by the jury instructions given in connection with the malice element of the common law vexatious litigation claim because the jury was specifically charged with finding whether the defendant had acted with "an intent to cause harm." *Id.* at 31. It is therefore possible a claim that is successful under § 52-568(2) would also

satisfy § 523(a)(6). But the Complaint and Motion are devoid of any analysis regarding the merits of Plaintiffs' claims under the Connecticut statute. And though Plaintiffs assert they are entitled to the treble damages award, the Connecticut Complaint requests either double or treble damages. Paulette's Declaration, Exh. 10 at ¶ 9.

Further, Plaintiffs have failed to assert facts supporting their claims either under the Connecticut statute or § 523(a)(6) directly with respect to their claim for attorneys' fees incurred in connection with the Connecticut Cases. Indeed, while the Statement and Complaint generally discuss a long history of allegedly malicious behavior and vexatious conduct, Plaintiffs have specifically asked for summary judgment with respect to the nondischargeability of Defendant's alleged liability in connection with the Connecticut Cases. Motion at 2. The only facts in the Statement specific to the Connecticut Cases are at paragraphs 41-46, 48-50, and 55. These facts primarily recite the procedural posture of the cases and Plaintiffs seem to rely on the Connecticut state court's order dismissing Defendant's counterclaim against them, stating that the Connecticut court "also entered an order granting full faith and credit to the Judge's order in the Tennessee state court lawsuit, therefore deeming Defendant an abusive litigant and placing a six (6) year injunction against Defendant from filing lawsuits in Connecticut without Court authorization." Statement, ¶ 55. But the court order referenced simply states that "[t]he court, granting full faith and credit to the judgment of the Tennessee court's judgment of October 18, 2018, finds the defendants are not in compliance with the court's orders, thereby mandating a dismissal of the defendants' counterclaims." Paulette's Declaration, Exh. 12. The order does not contain any findings regarding whether the Defendant is liable under Connecticut's vexatious litigation statute or is otherwise an abusive litigant, nor does it explicitly grant any injunctive relief with respect to Connecticut filings.

Plaintiffs have not set forth facts establishing Defendant's liability to them under Conn. Gen. St. § 52-568 with respect to the Connecticut Cases. And because it appears that a judgment issued under one part of the Connecticut statute may be nondischargeable (§ 52-568(2)) while a judgement issued under the other portion may be dischargeable (§ 52-568(1)), and the underlying complaint does not specify which portion of the statute entitles the Plaintiffs to relief, this Court is unable to make even a prospective determination of whether a favorable judgment on the Connecticut Complaint—if obtained—would be nondischargeable. Plaintiffs have therefore failed to establish that they are entitled to judgment as a matter of law with respect to their claims under Count I of the Complaint.

### ii. Count II: The Tennessee Judgment

Next, Plaintiffs assert that the $16,800 Tennessee Judgment is nondischargeable under § 523(a)(6) by virtue of the doctrine of collateral estoppel. Motion, 11. "Collateral estoppel principles apply to dischargeability proceedings." *St. Laurent v. Ambrose (In re St. Laurent),* 991 F.2d 672, 675 (11th Cir. 1993) (citing *Grogan v. Garner,* 498 U.S. 279, 285 n.11 (1991)). Though collateral estoppel may not be applied to "the ultimate issue of dischargeability," it may be used "to reach conclusions about facts that the court would then consider as evidence of nondischargeability." *Hinton v. Blocker (In re Blocker)*, No. 18-69243-BEM, 2020 WL 247311, at *3 (Bankr. N.D. Ga. Jan. 15, 2020) (quoting *CC Fin., LLC v. Harvey (In re Harvey)*, No. 16-12022, AP 16-1034, 2017 WL 432788, *2 (Bankr. N.D. Ga. Jan. 31, 2017) (Drake, J.) (internal citations and quotations omitted)). The law of the state in which the judgment was entered governs the reviewing court's analysis. *King v. Dennis (In re Dennis)*, No. 98-13241-WHD, 2020 WL 4290000, at *3 (Bankr. N.D. Ga. July 27, 2020) (citing *Thomas v. Loveless (In re Thomas)*, 288 Fed. Appx. 547, 548 (11th Cir. 2008)).

Under Tennessee law, collateral estoppel requires that the issue sought to be precluded (1) is "identical to the issue decided in the earlier suit" and (2) "was actually litigated and decided on the merits in the earlier suit;" that (3) the earlier judgment is final; and that the party against whom collateral estoppel is asserted (4) "was a party or is in privity with a party to the earlier suit;" and (5) "had a full and fair opportunity in the earlier suit to litigate the new issue now sought to be precluded." *Harris v. Steward*, No. W2019-00231-COA-R3-CV, 2019 WL 6799774, at *3 (Tenn. Ct. App. Dec. 13, 2019) (citing *Beaty v. McGraw*, 15 S.W.3d 819, 824-25 (Tenn. Ct. App. 1998)).

### 1. Identity of the Issues

For collateral estoppel to apply, the Court must determine that the Tennessee court necessarily and fully determined that Defendant's actions were willful and malicious. *E.g. In re Abbo v. Rossi (In re Abbo)*, 168 F.3d 930, 931 (6th Cir. 1999). "An injury is 'willful' when the debtor 'commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury,'" not when the debtor "'merely [commits] a deliberate or intentional act that leads to injury.'" *Cloninger v. Cloninger*, Case No. 1:16-CV-2386-RWS, 2017 WL 11496867, *3 (N.D. Ga. Oct. 24, 2017) (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)) (internal citations omitted). "An injury is malicious when it is 'wrongful and without just cause or excessive even in the absence of personal hatred, spite[,] or ill-will." *Wells Fargo Bank, N.A. v. Sutton (In re Sutton)*, 557 B.R. 831, 836 (Bankr. N.D. Ga. 2016) (quoting *Hope v. Walker* (*In re Walker*), 48 F.3d 1161, 1164 (11th Cir. 1995)).

In its October 29, 2018 order, the Tennessee court made specific findings under the Tennessee Abusive Civil Action Statute (the "TACAS"). The TACAS mandates dismissal of a pending civil action, an award of reasonable attorneys' fees and costs for defending such action, and a mandatory filing restriction of 48 to 72 months "[i]f the court finds by a preponderance of

the evidence that a person filing a civil action is an abusive civil action plaintiff" and the case[s] filed by that person "are abusive civil actions." Tenn. Code Ann. §§ 29-41-106(a), (b). An "abusive civil action" is defined as "a civil action filed by a plaintiff against a defendant with whom the plaintiff shares a civil action party relationship[3] primarily to harass or maliciously injure the defendant" if at least one of the statute's enumerated factors is also present. Tenn. Code Ann. § 29-41-101(1). An "abusive civil action plaintiff" is a person who files an abusive civil action as determined by the court "and against whom prefiling restrictions have been imposed pursuant to this subchapter." *Id.* § 101(2). For the purposes of the TACAS, "'[h]arass or maliciously injure' means the civil action determined to be an abusive civil action was filed with the intent or primarily designed to" result in one of the seven enumerated improper outcomes. *Id.* § 101(6).

Applying the statute, the Tennessee court found that the complaint Defendant filed against Plaintiffs was an "abusive civil action" under the TACAS because the claims underlying Defendant's complaint were "not warranted by existing law . . . since the libel and false light claims asserted in the [c]omplaint [were] barred by the one-year statute of limitations"; the allegations in the complaint lacked evidentiary support; and the issues raised in the complaint had already been litigated and disposed of unfavorably to Defendant because he filed a "virtually identical lawsuit . . . in the State of Connecticut" and dismissed it voluntarily with prejudice. Paulette's Declaration, Exh. 9, pg. 5, at ¶ 2. The Tennessee court also found that the complaint was filed "to harass or maliciously injure" Plaintiffs because it was filed "with the intent or primary design to "(i) 'exhaust, deplete, impair or adversely impact' the [Plaintiffs'] financial resources; (ii) force" or coerce [Plaintiffs] to "alter, engage in, or refrain from engaging in lawful conduct in

---

[3] The statute defines "a civil action party relationship" as one involving current or former spouses, roommates, romantic partners, adults related by blood, adoption, or marriage, or adult children of a person in a relationship described above." Tenn. Code Ann. § 29-41-101(5).

which [they] have a right to engage; and/or (iii) impair, or attempt to impair, the [Plaintiffs'] health or well-being." *Id.*, pg. 6, ¶ 3. Having made these findings, the court concluded that "Plaintiff is an abusive civil action plaintiff and [] this action is an abusive civil action." *Id.*, pg. 7, ¶ 8.

These findings track the requirements under § 523(a)(6). The Tennessee court found that the Tennessee Case was filed with the intent to cause financial injury as well as injury to the health and well being of the Plaintiffs. This finding satisfies the willfulness requirement under § 523(a)(6): Defendant intended the injury caused. Additionally, the Tennessee court found that the Tennessee Case was filed without just cause. This finding satisfies the maliciousness requirement under § 523(a)(6): the injury was malicious because it was excessive and filed without just cause. Additionally, the burden of proof is the same—a preponderance of the evidence. Accordingly, the Court finds that the first requirement for collateral estoppel under Tennessee law has been met.

## 2. The Remaining Elements of Collateral Estoppel Are Satisfied

The requirement that an issue be "actually litigated" is generally satisfied if the issue was properly raised by the pleadings or otherwise placed in issue and was actually determined in the prior proceeding. *Mullins v. State*, 294 S.W.3d 529, 535 (Tenn. 2009) (citations omitted). Further, "[u]nder Tennessee law, a default judgment does not preclude a finding that the issue was actually litigated for collateral estoppel purposes." *Brown v. Ausley (In re Ausley)*, 507 B.R. 234, 239 (Bankr. W.D. Tenn. 2014) (citing *Patterson v. Rockwell Int'l,* 665 S.W.2d 96, 101 (Tenn. 1984)). The "actually litigated" requirement is met in this case because Defendant's willful and malicious conduct was properly raised in Plaintiffs' motion and actually and necessarily determined by the Tennessee court.

Next, "courts have required that when the party against whom collateral estoppel is asserted was the defendant in the earlier proceeding, the party must have had notice of the claim and an opportunity to be heard." *Mullins*, 294 S.W.3d at 538 (citing *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 480–81 (1982)). Defendant initiated the Tennessee case, and his motion to stop harassment was originally set to be heard the same day as Plaintiffs' motions under the TACAS. He therefore had notice of the claims and an opportunity to be heard.

The parties to the Tennessee case and the above-captioned adversary proceeding are identical. The Tennessee Judgment was entered on October 29, 2018. Paulette's Declaration, Exh. 9. And in Tennessee, a judgment is final "thirty days after its entry unless a party files a timely notice of appeal or specified post-trial motion." *Creech v. Addington*, 281 S.W.3d 363, 377 (Tenn. 2009). No appeal or post-judgment motions were timely filed. Motion at 14. The Tennessee Judgment is therefore final. All five elements of collateral estoppel have been satisfied and the Tennessee Judgment is therefore nondischargeable under § 523(a)(6). Accordingly,

**IT IS ORDERED** that the Motion is **GRANTED IN PART**; Plaintiffs are entitled to summary judgment on Count II of the Complaint and the Tennessee Judgment in the amount of $16,800 is **NONDISCHARGEABLE.**

**IT IS FURTHER ORDERED** that the Motion is **DENIED IN PART** and summary judgment is denied on Count I of the Complaint.

The Clerk of Court shall serve a copy of this Order on the parties on the attached distribution list.

**END OF DOCUMENT**

**Distribution List**

Kenneth Floyd Parks
11950 Carriage Park Lane
Johns Creek, GA 30097

Kenneth Floyd Parks
3651 Peachtree Parkway
Suite E#185
Suwanee, GA 30024

Scott and Paulette Buchanan
115 Bill Road
Piney Flats, TN 37686

Scott and Paulette Buchanan
P.O. Box 3044
Bountville, TN 37617

Benjamin Keck
Rountree, Leitman & Klein, LLC
Suite 175, Century Plaza 1
2987 Clairmont Rd
Atlanta, GA 30329

David S. Klein
Rountree, Leitman & Klein, LLC
Suite 175, Century Plaza 1
2987 Clairmont Rd
Atlanta, GA 30329

Tamara Miles Ogier
Ogier, Rothschild & Rosenfeld PC
P.O. Box 1547
Decatur, GA 30031

Office of the United States Trustee
362 Richard Russell Building
75 Ted Turner Drive, SW
Atlanta, GA 30303